UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CURTIS A. McDANIEL,

                              Plaintiff,

                    -v.-

THE CITY OF NEW YORK, SHIRLONDA
GOLDEN, *Shield No. 5890,* IRWIN
DELEON, *Shield No. 1284,* CAPTAIN
SONIA MANZO, *Shield No. 1360,*

                              Defendants.

---

19 Civ. 8735 (KPF) (RWL)

**OPINION AND ORDER
ADOPTING REPORT AND
RECOMMENDATION**

KATHERINE POLK FAILLA, District Judge:

*Pro se* plaintiff Curtis McDaniel brings this action pursuant to 42 U.S.C. § 1983 alleging that while he was a pretrial detainee at Rikers Island, Defendants were deliberately indifferent to his safety and certain correction officers used excessive force against him, all in violation of his constitutional rights. Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Now pending before this Court is the January 21, 2022 Report and Recommendation issued by United States Magistrate Robert W. Lehrburger (the "Report" (Dkt. #86), copy attached), which recommends that Defendants' motion be granted in full.

The Court has examined the Report and notes that no party has objected within the fourteen-day period from its service, as provided by 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court finds no error in the Report and adopts it in its entirety.

**BACKGROUND**

The Court incorporates by reference the recitation of the facts provided in the Report, to which no party objects. (*See* Report 2-3).

On September 20, 2019, Plaintiff filed the underlying complaint in this matter. (Dkt. #2). On November 22, 2019, this matter was referred to Judge Lehrburger for general pretrial supervision. (Dkt. #6, 9). On May 28, 2020, Plaintiff filed an Amended Complaint, which is the operative pleading in this matter. (Dkt. #29). Three of the Defendants, the City of New York, Shirlonda Golden, and Sonia Manzo, answered the Amended Complaint on July 24, 2020. (Dkt. #34). On December 14, 2020, Defendant Irwin DeLeon filed his answer to the Amended Complaint. (Dkt. #48). Fact discovery concluded on March 25, 2021. (Dkt. #58). Thereafter, on May 10, 2021 Defendants filed a motion for summary judgment (Dkt. #63-68), which motion the Court referred to Judge Lehrburger for a report and recommendation (Dkt. #69). Plaintiff filed an opposition to Defendant's motion on July 9, 2021. (Dkt. #73-76). Defendants filed their reply brief on August 28, 2021. (Dkt. #80).

On January 21, 2022, Judge Lehrburger issued the Report, recommending that the Court grant Defendants' motion for summary judgment. (Dkt. #86). The deadline for the parties to file objections to the report was February 4, 2022. (*See* Report 24-25). To date, no objections have been filed.

**DISCUSSION**

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Grassia* v. *Scully*, 892 F.2d 16, 19 (2d Cir. 1989).  A court may also accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous.  *See Ramirez* v. *United States*, 898 F. Supp. 2d 659, 663 (S.D.N.Y. 2012) (citation omitted).  A magistrate judge's decision is clearly erroneous only if the district court is "'left with the definite and firm conviction that a mistake has been committed.'"  *Easley* v. *Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States* v. *U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "A party's failure to object to a report and recommendation, after receiving clear notice of the consequences of such a failure, operates as a waiver of the party's right both to object to the report and recommendation and to obtain appellate review."  *Grady* v. *Conway,* No. 11 Civ. 7277 (KPF) (FM), 2015 WL 5008463, at *3 (S.D.N.Y. Aug. 24, 2015) (citing *Frank* v. *Johnson*, 968 F.2d 298, 300 (2d Cir. 1992)).

As neither party has submitted objections to the Report, review for clear error is appropriate.  *See Phillips* v. *Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013).  The Court has reviewed the Report and finds that its reasoning is sound and that it is grounded in fact and law.  More specifically, the Court agrees with the Report's conclusions that: (i) Plaintiff failed to provide any evidence in support of his claim for municipal liability (Report 11-13);

3

(ii) neither Manzo nor Golden had personal involvement in the alleged deprivations of Plaintiff's constitutional rights, as necessary to give rise to liability under Section 1983 (*id.* at 13-15); (iii) Plaintiff failed to establish that the circumstances of his incarceration posed a substantial risk of serious harm or that Defendants were deliberately indifferent to such a risk, both of which are necessary elements for a claim for deliberate indifference to Plaintiff's safety (*id.* at 15-19); (iv) the record does not contain any evidence suggesting that Defendants applied excessive force to Plaintiff (*id.* at 19-22); and (v) Plaintiff's negligence claim fails because Defendants did not breach their duty to protect Plaintiff from impending harm (*id.* at 22-24).  Having reviewed the record, the Court finds no clear error and adopts the Report in its entirety.

Furthermore, because the Report explicitly states that "[f]ailure to file timely objections will result in waiver of objections and preclude appellate review" (Report 25), both parties' failure to object operates as a waiver of appellate review, *see Caidor* v. *Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (citing *Small* v. *Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)).

## CONCLUSION

The Court agrees completely with Judge Lehrburger's well-reasoned Report and hereby adopts its reasoning by reference.  Accordingly, it is ordered that summary judgment be GRANTED in Defendants' favor in its entirety.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.  The Clerk of Court is further directed to mail a copy of this Opinion and Order to Plaintiff at his address of record.

SO ORDERED.

Dated:   February 11, 2022
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___1/21/2022___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CURTIS A. MCDANIEL,                          :
                                             :          19-CV-8735 (KPF) (RWL)
                           Plaintiff,        :
                                             :
          - against -                        :          **REPORT AND RECOMMENDATION**
                                             :          **TO HON. KATHERINE P. FAILLA**
                                             :          **SUMMARY JUDGMENT**
                                             :
THE CITY OF NEW YORK, et al.,                :
                                             :
                           Defendants.       :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

 Plaintiff Curtis McDaniel ("McDaniel"), proceeding *pro se*, filed this lawsuit against

the City of New York (the "City") and several Correction Officers: Captain Sonia Manzo

("Manzo") and Officers Shirlonda Golden ("Golden") and Irwin DeLeon ("DeLeon")

(collectively, "Defendants") pursuant to 42 U.S.C. § 1983. McDaniel alleges that while he

was incarcerated at Rikers Island, the Defendants were negligent and deliberately

indifferent to his safety and that certain correction officers used excessive force against

him. Defendants have moved for summary judgment pursuant to Rule 56 of the Federal

Rules Of Civil Procedure. (Dkt. 63.) For the following reasons, I recommend that

Defendants' motion be GRANTED and that judgment be entered in favor of Defendants

and against McDaniel.

**FACTS**[1]

At all relevant times, McDaniel was a pretrial detainee housed at the Anna M. Kross Correctional Facility ("AMKC") at Rikers Island operated by the New York City Department Of Correction.  (SOF ¶¶ 1-2.)  When he entered AMKC on March 9, 2019, McDaniel was initially housed in the W18LB housing unit.  (SOF ¶ 2.)  Two weeks later, McDaniel was transferred within AMKC to a housing unit called Dorm 2 Upper.  (Compl. at 5; [2] SOF ¶ 8.)

On March 30, 2019, McDaniel had a physical altercation with N.O., another pretrial detainee, while they were in an area where phone calls could be made.[3]  N.O. demanded that McDaniel "sell" him his phone calls, which McDaniel refused to do.  (Compl. at 5; SOF ¶¶ 17-18.)  N.O. followed McDaniel from the calling area to McDaniel's bunk and continued to "harass" and "threaten" him.  (Compl. at 6; McDaniel Dep. at 91-92, 99.[4])  N.O. insisted that the two go to the bathroom to fight.  (McDaniel Dep. at 91; SOF ¶ 19.)  Initially McDaniel refused, but he ultimately went to the bathroom and engaged in some

---

[1] Unless otherwise noted, the facts are drawn from Defendants' Statement Of Undisputed Facts Pursuant To Local Civil Rule 56.1 ("SOF") (Dkt. 67), to which McDaniel provided no counterstatement, Defendants' supporting exhibits attached to the Declaration of Peter W. Brocker (Dkt. 64), and the procedural docket.  Additionally, mindful of the duty to extend special solicitude to *pro se* litigants, the Court has conducted a thorough review of the available record and considered McDaniel's admissible evidence.  The Court draws all reasonable inferences and resolves all ambiguities in favor of McDaniel, the nonmoving party.  The consequences of McDaniel's failure to file a Rule 56.1 statement are discussed further below.

[2] "Compl." refers to Plaintiff's Amended Complaint at Dkt. 29.

[3] McDaniel does not name this individual in his Complaint, and the Defendants refer to the individual by his initials.

[4] "McDaniel Dep." refers to the transcript of the deposition of Curtis McDaniel conducted on March 24, 2021.  (Dkt. 64, Ex. B.)  The page numbers cited by the Court refer to the internal pagination on the transcript.

kind of altercation with N.O.[5]   (Compl. at 6; SOF ¶¶ 19-25; McDaniel Dep. at 104.) McDaniel left the bathroom and walked into the dayroom followed by N.O., who "started screaming and yelling." (Compl. at 7; SOF ¶ 26; McDaniel Dep. at 104.)

Another unidentified correction officer intervened by physically placing himself between McDaniel and N.O.[6]   The correction officer attempted to restrain N.O. but was unable to do so.  N.O. lunged at McDaniel several times.  Although McDaniel successfully pushed N.O away, N.O. was able to grab McDaniel.  The two began to fight, and N.O. held McDaniel in a headlock.   (Compl. at 3; SOF ¶¶ 27-34; McDaniel Dep. at 104-05.) The unidentified correction officer requested back up, and another correction officer entered the area and attempted to break up the fight.  The officer grabbed McDaniel and pulled him away from N.O.; however, when he realized that N.O. had McDaniel in headlock, he ordered N.O. to release McDaniel, and N.O. complied.  (Compl. at 3; SOF ¶¶ 38-41; McDaniel Dep. at 106.)   The two men were separated, and McDaniel was removed from the dayroom.  (Compl. at 7; SOF ¶ 43; McDaniel Dep. at 106.)

McDaniel claims that as a result of the incident he suffered a pulled neck muscle and injuries to his arm, head, and tongue.  (Compl. at 8; McDaniel Dep. at 165.)

---

[5] In the Amended Complaint, McDaniel alleges that "as I went in the bathroom [N.O.] jumped in front of me and cut me on the arm with some sharp rock or something." (Compl. at 6.)  During his deposition, McDaniel testified that N.O. "reached in his waistband as if he was going to grab a weapon or something, and I flinched at him, and I walked out of the bathroom because I didn't know what he had or what was going to happen." (McDaniel Dep. at 104.)

[6] McDaniel identified this correction officer as Defendant DeLeon in the Amended Complaint but testified as his deposition that he did not know which officer intervened and ended the fight.

**PROCEDURAL HISTORY**

On September 20, 2019, McDaniel filed his original complaint.  (Dkt. 2.)  McDaniel filed the operative Amended Complaint on May 28, 2020, which additionally named Defendants Golden and DeLeon.[7]  (Dkt. 29.)

The parties proceeded through discovery, which concluded on March 25, 2021. (Dkt. 58.)  On May 10, 2021, Defendants filed the instant motion for summary judgment. (Dkt. 63.)  Defendants filed a declaration and a memorandum in support of the motion as well as a statement of undisputed material facts pursuant to the Southern District of New York's Local Civil Rule 56.1.  (Dkts. 64, 65, 67.)  Along with the supporting Declaration of Peter Brocker, Defendants submitted several exhibits including: (1) the New York City Department of Correction Inmate Movement History regarding McDaniel's transfers within Rikers Island; (2) excerpts of McDaniel's deposition, dated March 24, 2021; (3) the New York City Department of Correction New Admission Screening Report for McDaniel; (4) the New York City Department of Correction Injury to Inmate Report for McDaniel, dated March 30, 2019; and (5) a Notice of Personal Injury Claim Form submitted by McDaniel on April 16, 2019.

On May 12, 2021, the case was referred to me for report and recommendation on the Defendants' motion for summary judgment.  (Dkt. 69.)  McDaniel filed an opposition to Defendants' motion on July 9, 2021 (Dkt. 73),[8] and Defendants filed their reply on

---

[7] Correction Officer Gordon, previously named in the first complaint, was not named in the Amended Complaint.  (Dkt. 29.)

[8] McDaniel filed duplicate copies of his opposition at Dkts. 73 and 76.

4

August 28, 2021. (Dkt. 80.) McDaniel did not submit a Rule 56.1 Statement of Undisputed Facts.

## LEGAL STANDARDS

The Court sets forth the relevant legal standards regarding summary judgment, review of *pro se* pleadings, and the requirements for deliberate indifference and excessive force claims under 42 U.S.C. § 1983.

### A.   Summary Judgment

"[A] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986). The Court's task is not to resolve contested issues of fact but rather to determine whether there exists any disputed issue of material fact. *Donahue v. Windsor Locks Board Of Fire Commissioners*, 834 F.2d 54, 58 (2d Cir. 1987); *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir. 1986). "'A fact is material when it might affect the outcome of the suit under governing law.'" *Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 421 F. App'x 97, 101 (2d Cir. 2011) (summary order) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)). A dispute "is 'genuine' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

"The moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" *Federal Deposit Insurance Corp. v. Great American Insurance Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Celotex*, 477 U.S. at 323, 106

S. Ct. at 2553).  Once that burden is met, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Id.* (citing *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2510).

"'All evidence submitted on the motion is to be construed in the manner most favorable to the nonmoving party.'"  *Okin v. Village Of Cornwall-On-Hudson Police Department*, 577 F.3d 415, 427 (2d Cir. 2009) (quoting *Horvath v. Westport Library Association*, 362 F.3d 147, 151 (2d Cir. 2004)).  However, "[t]o defeat a summary judgment motion, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and 'may not rely on conclusory allegations or unsubstantiated speculation.'"  *Federal Deposit Insurance Corp.*, 607 F.3d at 292 (first quoting *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986), then quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).  While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248, 106 S. Ct. 2510; *see also Knight*, 804 F.2d at 11-12 ("'the mere existence of factual issues – where those issues are not material to the claims before the court – will not suffice to defeat a motion for summary judgment'" (alteration omitted)) (quoting *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985) (per curium)).

Where, as here, a plaintiff is *pro se*, district courts must read his or her pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted).  Courts "are less demanding of [pro se] litigants generally, particularly where

motions for summary judgment are concerned." *Jackson v. Federal Express*, 766 F.3d 189, 195 (2d Cir. 2014). A pro se litigant thus is given "special solicitude" in responding to a motion for summary judgment. *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010); *see also Knowles v. New York City Department Of Corrections*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995) (same). This solicitude, however, "does not relieve [the pro se litigant] of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen*, 351 F.3d at 50 (internal quotation marks omitted).

**B.    Consequences of McDaniel's Failure to Provide a Rule 56.1 Statement**

Pursuant to Rule 56(c) of the Federal Rules Of Civil Procedure, a party asserting that a fact cannot be, or is, genuinely disputed "must support the assertion by" either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court need only consider the cited materials, although it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Southern District of New York's local rules require the parties to submit enumerated statements of undisputed and disputed material facts. Local Civil Rule 56.1(a)-(b). Consistent with Rule 56(c) of the Federal Rules of Civil Procedure, "[e]ach statement by the movant or opponent . . . including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible." Local Civil Rule 56.1(d).

"*Pro se* litigants . . . are not excused from meeting the requirements of Local Civil Rule 56.1" when a party moving for summary judgment provides notice to a pro se party consistent with Local Civil Rule 56.2. *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178

7

(S.D.N.Y. 2009); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 502 n.1 (S.D.N.Y. 2015) ("A pro se litigant is not excused from [Local Civil Rule 56.1]").  If the *pro se* party fails to file a Rule 56.1 statement, a court may deem all factual allegations of the moving party as true or, in the alternative, may "opt to conduct an assiduous review of the record." *Battle v. Day Care Council, Local 205, DC 1707 Welfare Fund*, No. 11-CV-4043, 2012 WL 3055574, at *1 n.1 (S.D.N.Y. July 26, 2012) (internal quotation marks and citation omitted); *see Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. March 13, 2014) (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *see also Anand v. New York State Division of Housing and Community Renewal*, No. 11-CV-9616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).

While Defendants filed a Rule 56.1 statement, McDaniel did not.  Nor did McDaniel directly object to Defendants' Rule 56.1 statement in whole or in part, despite the fact that Defendants served McDaniel with the requisite Notice To Pro Se Litigants.  (Dkt. 66.) Instead, McDaniel submitted only an opposition to Defendants' motion, addressing only two of Defendants' arguments and containing few factual contentions.  The Court therefore accepts as true Defendants' factual assertions in its Rule 56.1 statement, but also credits, for purposes of this motion, McDaniel's factual assertions to the extent they are based on personal knowledge and not unduly speculative.

**C.     Section 1983 Claims**

To state a cause of action under 42 U.S.C. § 1983, "'a plaintiff must allege that some person acting under color of state law deprived him of a federal right.'"  *Ahlers v.*

*Rabinowitz*, 684 F.3d 53, 60-61 (2d Cir. 2012) (quoting *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986)).  Because § 1983 does not provide its own substantive right, plaintiffs must identify the federally protected right that was allegedly violated.  *See Gonzaga University v. Doe*, 536 U.S. 273, 285, 122 S. Ct. 2268, 2276 (2002) (plaintiffs cannot simply claim a violation of § 1983, because § 1983 "'by itself does not protect anyone against anything'") (quoting *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617, 99 S. Ct. 1905, 1916 (1979)).  Accordingly, the plaintiff must show that (1) the defendant acted under color of state law and that (2) as a result of the defendant's actions, the plaintiff suffered a denial of federal statutory rights or constitutional rights or privileges.  *Annis v. County Of Westchester*, 136 F.3d 239, 245 (2d Cir.1998).  Additionally, "in all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."  *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998); *see also White v. City Of New York*, No. 16-CV-6183, 2017 WL 3575700, at *5 (S.D.N.Y. Aug. 17, 2017).

Read liberally, the Amended Complaint asserts claims for deliberate indifference to safety and excessive force.  Because he was a pre-trial detainee at the time the incident in question occurred, McDaniel's 1983 claims arise under the Fourteenth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims are evaluated under the Due Process Clause because[ ] [p]retrial detainees have not been convicted of a crime and thus may not be punished in any manner – neither cruelly and unusually nor otherwise") (internal quotation marks and citations omitted); *Barnes v. Harling*, 368 F. Supp. 3d 573, 596 (W.D.N.Y. 2019) ("Under current Second Circuit law, when a pretrial detainee plaintiff brings § 1983 claims alleging deliberate indifference,

9

including claims alleging failure to protect or intervene," a district court analyzes these claims under the Fourteenth Amendment using the standard set forth in *Darnell*); *Graham v. Conner*, 490 U.S. 386, 395 n.10, 109 S. Ct. 1865, 1871 n.10 (1989) ("the Due Process Clause [of the Fourteenth Amendment] protects a pretrial detainee from the use of excessive force that amounts to punishment"); *Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) ("pretrial detainees … rely on the constitutional guarantee of 'due process'").

### 1. Deliberate Indifference To Prisoner Safety - Failure To Intervene

To state a claim of deliberate indifference under the Due Process Clause of the Fourteenth Amendment, a plaintiff's allegations must satisfy a two-prong test comprised of both objective and subjective standards. "[T]o establish an objective deprivation, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health. … There is no static test to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." *Molina v. County of Westchester*, No. 16-CV-3421, 2017 WL 1609021, at *2 (S.D.N.Y. Apr. 28, 2017) (internal citations and quotation marks omitted). To satisfy the second, subjective prong, "[a] pretrial detainee must prove that the defendant-official acted intentionally … or recklessly failed to act with reasonable care to mitigate the risk … even though the defendant-official knew, or should have known, of the risk of harm." *Id.* at *3 (internal quotations marks

omitted); *see also Darnell*, 849 F.3d at 35  (same and referring to this subjective prong as the "*mens rea* prong").

### 2.     Excessive Force

A claim of excessive force under the Fourteenth Amendment arises under the Due Process Clause.  *See United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999).  To prevail on a Fourteenth Amendment excessive force claim, a pretrial detainee must show that "the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97, 135 S. Ct. 2466, 2473 (2015).  In contrast to both the subjective and objective elements of the deliberate indifference claim, an excessive force claim under the Fourteenth Amendment uses a wholly objective standard. *See id.* at 397, 135 S. Ct. at 2473.

### DISCUSSION

As discussed below, McDaniel's claims should be dismissed on summary judgment.  McDaniel's claims against the City should be dismissed as there is no evidence of municipal liability.  The claims against officers Manzo and Golden should be dismissed because there is no evidence by which a reasonable juror could find Manzo and Golden were personally involved in any actionable conduct or absence of conduct. Further, there is no evidence to establish the objective element of either Section 1983 claim or the subjective element of the deliberate indifference claim.

### A.     No Evidence Of Municipal Liability

Municipalities cannot be vicariously liable under Section 1983 for their employees' acts.  *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978).  Municipalities are only liable under Section 1983 for constitutional deprivations

resulting from a governmental policy or custom. *Id*., 98 S. Ct. at 2037-8.  A plaintiff may demonstrate that such a  policy or custom exists by introducing evidence of one of the following: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Jones v. Westchester County*, 182 F.Supp.3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City of New York*, 705 F.Supp.2d 261, 276–77 (S.D.N.Y. 2010)). To prevail on a *Monell* claim, a plaintiff must also show that "there is a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation" he suffered.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203 (1989).

The City is a municipality and therefore cannot be sued as a defendant absent a viable *Monell* claim.  McDaniel has not provided any evidence, let alone particularized allegations, of any policies or widespread practices or customs related to the alleged action, or inaction, of the correction officers.  Nor has McDaniel provided any evidence, or even claimed, that a need for better monitoring and training was otherwise obvious. Rather, the facts as alleged and for which proof has been presented concern a specific one-time incident involving a physical altercation between McDaniel and another inmate. Those allegations are not enough to indicate a customary practice or existence of a particular policy. *See City Of Oklahoma City v. Tuttle*, 471 U.S. 808, 841, 105 S. Ct. 2427,

2445 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker").  Despite naming the City as a defendant, the Amended Complaint does not even address the City and contains no allegations connecting policymaking officials with the alleged misconduct or alleging failure to train or supervise.  Accordingly, the Complaint fails to state an actionable civil rights claim against the City.  Similarly, the record is devoid of any evidence to support such a claim.  Judgment should be granted in favor of the City.

**B.    No Proof Of Personal Manzo Or Golden's Personal Involvement**

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Johnson v. Newburgh Enlarged School District*, 239 F.3d 246, 254 (2d Cir. 2001); *see also Lloyd v. City of New York*, 43 F. Supp. 3d 254, 266 (S.D.N.Y. 2014) ("Personal involvement is a question of fact and must be satisfied as to each individual defendant"). Personal involvement can be established by showing that the individual "(1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated."  *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) (quoting *Iqbal v. Hasty,* 490 F.3d 143, 152–153 (2d Cir.2007)).  McDaniel

has not presented evidence by which a reasonable juror could find the requisite personal involvement of either Manzo or Golden.

McDaniel testified that Manzo was not present for the incident "until it was all over." (McDaniel Dep. at 98-99.)  When asked whether Manzo had an opportunity to intervene and stop the fight between him and N.O., McDaniel stated that he was "not sure." (McDaniel Dep. at 191.)

Similarly, Defendant Golden was not directly involved in the altercation between McDaniel and N.O.  Golden was stationed in the "bubble" – the housing area's command center, which is "[a]bout 25, 30 feet away" from where the incident occurred.  (McDaniel Dep. at 107.)  McDaniel testified that he did not tell Golden that he was going to fight with N.O. and that Golden did not have an opportunity to stop the fight.  (McDaniel Dep. at 109, 191).  McDaniel also indicated that Golden could not "particularly see out of the bubble into the dorm per se."  (McDaniel Dep. at 107.)

McDaniel has presented no evidence that either Defendant Golden or Manzo directly participated in the incident, failed to address a violation, developed or enforced a problematic policy related to the violation, failed to supervise the correction officers who allegedly committed the violation, or were in any other way deliberately indifferent to McDaniel's rights.  McDaniel's conclusory allegations are not sustainable.  *See Brown v. Doe*, No. 13-CV-8409, 2014 WL 5461815, at *8 (S.D.N.Y. Oct. 28, 2014) ("Conclusory accusations regarding a defendant's personal involvement in the alleged violation,

standing alone, are not sufficient") (internal quotation marks omitted).  Without more, the claims against Manzo and Golden cannot stand and should be dismissed.

**C.      No Deliberate Indifference Claim**

"Prison officials have a duty … to protect prisoners from violence at the hands of other prisoners."  *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S. Ct. 1970, 1976 (1994) (internal quotation marks omitted).  Therefore, in certain circumstances, "[a]llowing an attack on an inmate to proceed without intervening is a constitutional violation."  *Rosen v. City of New York*, 667 F. Supp. 2d 355, 360 (S.D.N.Y. 2009) (internal quotation marks omitted).  However, "[n]ot every injury that a prisoner suffers at the hands of another results in constitutional liability for the officials responsible for that prisoner's safety."  *Taylor v. City Of New York*, No. 16-CV-7857, 2018 WL 1737626, at *11 (S.D.N.Y. March 27, 2018) (citing *Farmer*, 511 U.S. at 834, 114 S. Ct. 1970, 1977).  McDaniel's deliberate indifference claims requires him to demonstrate (1) that the alleged violation was "sufficiently serious" and (2) that the Defendants knowingly disregarded an excessive risk to his health or safety.  Defendants argue that McDaniel cannot establish either the objective or subjective prong of his deliberate indifference claim.  The Court agrees.

As an initial matter, McDaniel concedes that an unidentified Correction Officer, and later Defendant DeLeon, **did** intervene during the altercation with N.O.  (Compl. at 7.) Presumably, McDaniel alleges that a Correction Officer should have intervened earlier to prevent the fight.  Defendants argue that they were not on notice of the incident prior to

its occurrence and therefore could not have taken steps to intervene before the fight began.

### 1.    No Substantial Risk Of Serious Harm

To meet the objective prong for a claim based on failure to protect, McDaniel must show that he was incarcerated under conditions that posed a substantial risk of serious harm.  Although there is not litmus test for what is considered "sufficiently serious" the Second Circuit has explained that "prisoners may not be deprived of their basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—and they may not be exposed to conditions that pose an unreasonable risk of serious damage to their future health."  *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (internal brackets and quotation marks omitted).  For a failure to protect claim in the context of violence between incarcerated individuals, "[a] substantial risk of serious harm can be demonstrated where there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding the altercation or a request by plaintiff to be separated from the attacker."  *Gilmore v. Rivera,* No. 13–CV–6955, 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014).

McDaniel argues that moving him to the Dorm 2 Upper exposed him to serious risk, of which Defendants were or should have been aware.  McDaniel alleges that Defendants knew that members of a certain gang were targeting him and that they purposely moved him to a housing unit in which many members of that gang were also housed.  (Compl. at 5.)  McDaniel provides no details to support these allegations and

does not offer any evidence showing that on the day in question, he was at substantial risk of harm.

Upon his arrival to AMKC, McDaniel was asked if he knew of any reason why he would be at risk or need special protection.  He indicated that he did not.  (SOF ¶¶ 3-5; McDaniel Dep. at 77.)  McDaniel asserts that in the moments leading up to the altercation with N.O., he informed the Correction Officer posted near the phone that "N.O. was angry, and that he has some kind of psychological problem, and that he is stalking me and he's threatening me" and that he told N.O. in front of this officer that he did not want to engage in a fight.  (McDaniel Dep. at 84.)  McDaniel does not know which Correction Officer he spoke to because there were two officers on the floor – the unidentified Defendant Doe and Defendant DeLeon.  (McDaniel Dep. at 85.)  Without more, McDaniel's claim cannot survive.

At no point either before or after his transfer to the new housing unit did McDaniel report to Defendants that he was afraid of or targeted by N.O.  (SOF ¶¶ 12-13; McDaniel Dep. at 85.)  Moreover, McDaniel had interacted with N.O. a few times before the March 30, 2019 altercation without any threats of violence or cause for concern.  (SOF ¶¶ 15-16; McDaniel Dep. at 90.)

McDaniel has not established a previous altercation with N.O. or that he complained about N.O. or made a request to be separated from N.O. prior to the altercation.  McDaniel thus cannot meet the objective standard of establishing that he was subject to a sufficiently serious risk of harm.  *See e.g.*, *Ewers v. City Of New York*, No. 17-CV-1116, 2021 WL 2188128, at *6 (S.D.N.Y. May 28, 2021) (granting summary judgment to defendants on the first prong of plaintiff's failure to protect claims because

17

"Plaintiff has not provided any evidence that he and [the other inmate] engaged in prior physical altercations that should have indicated to Officer Haywood that there was an unreasonable risk of serious harm to plaintiff, as is required for plaintiff to succeed on his failure to protect claim"); *Leckie v. City Of New York*, No. 18-CV-3917, 2021 WL 84234, at *5 (E.D.N.Y. Jan. 11, 2021) (granting defendants' summary judgment motion regarding claims of deliberate indifference because plaintiff "does not demonstrate that he was incarcerated in conditions that posed a substantial risk of harm, because prior to this attack he testified that he did not fear for his life or safety; further, [plaintiff] had not complained about his attackers, raised concerns about his safety in Housing Area 6B, or otherwise provided notice to [defendants] that he was at a substantial risk of harm"); *Gilmore*, 2014 WL 1998227 at *3 (dismissing claim as a matter of law where "nothing suggests that [the Department of Corrections] or the other Defendants would have known [prior to the incident] that Plaintiff himself was at risk"); *Stewart v. Schiro*, No. 13-CV-3613, 2015 WL 1854198, at *7 (E.D.N.Y. Apr. 22, 2015) (dismissing failure to protect claim where plaintiff had never been involved in an attack before and had no reason to suspect that he would be attacked on the day of the incident).

### 2.  No Deliberate Indifference

For the same, and additional reasons, McDaniel cannot establish the second requirement that Defendants were deliberately indifferent.  To assess the deliberate indifference element, the question is whether an official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."

18

*Darnell*, 849 F.3d at 35.

McDaniel has offered no evidence indicating that the Defendants either intentionally or recklessly failed to act to mitigate the risk.  In the context of prisoner safety, a prison official's failure to intervene violates a pretrial detainee's Fourteenth Amendment rights only where the officer acted with "deliberate indifference to a substantial risk of serious harm" to the detainee.  *Farmer,* 511 U.S. at 836, 114 S. Ct. at 1978 (internal quotation marks omitted).  "In the context of a failure to intervene claim, an officer displays deliberate indifference when he has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate without risk to himself, yet fails to intervene."  *Rosen*, 667 F. Supp. 2d at 360 (internal quotation marks omitted).  Here, the undisputed facts show that Correction Officers responded to the altercation by directly intervening between McDaniel and N.O., attempting to restrain N.O., requesting back up assistance, and separating McDaniel from N.O.  Nothing in the record indicates that the Defendants failed to intervene in the incident, let alone that they did so with deliberate indifference.  Accordingly, the Defendants are entitled to summary judgment with respect to McDaniel's deliberate indifference claims.

**D.    No Excessive Force Claim**

To make a successful excessive force claim under the Fourteenth Amendment, McDaniel must show that the used against him was objectively unreasonable.  *Kingsley*, 576 U.S. at 396-97, 135 S. Ct. at 2472-73.  Factors bearing on the objective reasonableness of the force include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at

issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Edrei*, 892 F.3d at 534 (internal quotation marks omitted).

The record here is devoid of any evidence of unreasonable use of force. The parties agree that while McDaniel and N.O. were engaged in a physical altercation, a correction officer pulled McDaniel away from N.O.[9] Because N.O. had McDaniel in a headlock, the correction officer pulling on McDaniel gave N.O. a direct order to release McDaniel, which N.O. complied with, and then the officer separated the two men. (Compl. at 7; SOF ¶¶ 38-41; McDaniel Dep. at 105-06.) Grabbing or pulling a detainee may constitute a significant use of force and in certain cases may form the basis of a constitutional violation. However, "if the force was applied in a good-faith effort to maintain or restore discipline, it is unlikely to be repugnant to the conscience of mankind, and will not amount to excessive force under Second Circuit law." *Quinones v. Rollison*, No. 18-CV-1170, 2020 WL 6420181, at *4 (S.D.N.Y. Nov. 1, 2020) (internal quotation marks omitted).

McDaniel does not dispute that the sole purpose of the officer's use of force was to end the fight between the two detainees. In a prison setting, the use of force to restore order can be reasonable. *See e.g.*, *Quinones*, 2020 WL 6420181 at *4 (granting summary judgment to Correction Officer who used pepper spray to break up a fight between prisoners); *Dobbins v. Ponte*, No. 15-CV-3091, 2017 WL 3309726, at *5 (S.D.N.Y. Aug. 2, 2017) (granting summary judgment to the defendants as to the plaintiff's Fourteenth

---

[9] It is unclear which Correction Officer allegedly used excessive force against McDaniel. The Amended Complaint states that Defendant DeLeon pulled McDaniel away from N.O., but at his deposition, McDaniel indicated that he was not sure if it was Defendant DeLeon or another officer. (Compl. at 7; McDaniel Dep. at 106.)

Amendment excessive use of force claim because the plaintiff "was indisputably acting in a belligerent and defiant manner"); *Barnes v. Harling*, 368 F. Supp. 3d 573, 593 (W.D.N.Y. 2019) (finding that a correction officer's use of force to break up a fight did not rise to the level of constitutional violation).

Defendants argue that given the circumstances, the officers' actions were reasonable and no reasonable juror could find otherwise.  Noting the Court's duty to "take account of the legitimate interests in managing a jail" and deferring to "policies and practices needed to maintain order and institutional security is appropriate," the Court agrees that the minimal force used to separate McDaniel from N.O. was objectively reasonable.  *Frost v. New York City Police Department*, 980 F.3d 231, 252 (2d Cir. 2020) (quoting *Kingsley*, 576 U.S. at 399-400, 135 S. Ct. at 2474).

Additionally, McDaniel has presented no evidence that his injury was incurred while an officer was separating him from N.O. as compared to when N.O. first put McDaniel in a headlock.  But even if he had, the injury alleged by McDaniel is de minimis. McDaniel alleges that the officer's use of force led him to suffer a pulled neck muscle. The Second Circuit has clearly ruled, however, that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997).  Rather, plaintiffs must "show that the harm incurred was more than de minimis."  *Berry v. City Of New York Department Of Corrections.*, No. 12-CV-7819, 2014 WL 2158518, at *5 (S.D.N.Y. May 22, 2014), *aff'd sub nom.*, 622 F. App'x 10 (2d Cir. 2015); *see also Lynch v. City Of New York*, 952 F.3d 67, 77 (2d Cir. 2020) ("there is a de minimis level of imposition with which the Constitution is not concerned") (internal quotation marks

omitted); *Lewis v. Huebner*, No. 17-CV-8101, 2020 WL 1244254, at *5 (S.D.N.Y. Mar. 16, 2020) ("claims for excessive force under the Fourteenth Amendment must involve force that is either more than de minimis or repugnant to the conscience of mankind") (internal quotation marks omitted).

Based on the foregoing, a reasonable juror could not conclude that the officers used excessive force while intervening in the altercation between McDaniel and N.O. Consequently, McDaniel's excessive force claim cannot proceed.

**E.    Qualified Immunity**

Defendants argue that if claims against Defendant DeLeon survive summary judgment, he is nonetheless entitled to qualified immunity.  Defendants have established that there is insufficient evidence to establish either deliberate indifference or excessive force.  They are entitled to summary judgment on that basis.  Accordingly, the Court need not address the issue of qualified immunity.

**F.    Negligence Claim**

In addition to the Section 1983 claims, McDaniel asserts a state law negligence claim; i.e., that Defendants neglected their duty to protect him from N.O.  (Compl. at 8-9.) This claim too should be dismissed on the merits.[10]

---

[10] Where, as here, a federal court dismisses all federal claims, the court may exercise its discretion to decline supplemental jurisdiction and dismiss remaining state law claims without prejudice.  *See* 28 U.S.C. § 1367(c)(3); *see also Blackrock Balanced Capital Portfolio v. HSBC Bank USA, National Association*, 95 F. Supp. 3d 703, 708-09 (S.D.N.Y. 2015) (district court "may decide to refuse to exercise supplemental jurisdiction if ... the district court has dismissed all other claims over which it had federal jurisdiction...."); *Rosario v. International Auto Mall & Leasing Center, Inc.*, No. 12-CV-4059, 2013 WL 1144893, at *4 (S.D.N.Y. March 19, 2013) (dismissing state claim where the court "has no independent basis for federal jurisdiction").  Conversely, the Court may exercise its discretion to resolve the state court claims.  *See Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639, 129 S. Ct. 1862, 1866 (2009) ("A district court's decision whether

Under New York law, plaintiffs alleging negligence must establish "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739, 747 (S.D.N.Y. 2017) (quoting *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013)). "[I]t is well-established in New York that when the State assumes physical custody of inmates or detainees, who cannot protect and defend themselves in the same way as those at liberty can, the State owes a duty of care to safeguard those individuals from harm." *Maldonado v. Town Of Greenburgh*, 460 F. Supp. 3d 382, 400 (S.D.N.Y. 2020). That duty extends to attacks from other incarcerated persons; however, it does not "render the State an insurer of inmate safety." *Sanchez v. State Of New York*, 99 N.Y.2d 247, 252 784 N.E.2d 675, 678(N.Y. 2002). Rather, "the scope of the State's duty to protect inmates is limited to risks of harm that are reasonably foreseeable." *Id.*

As discussed above in the context of McDaniel's § 1983 claims, Defendants were not on notice of any specific threat or impending harm to McDaniel, and N.O's attack was not reasonably foreseeable. Defendants thus did not breach their duty with respect to McDaniel's safety, and Defendants are entitled to summary judgment.[11] *See Case v.*

---

to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary"). Given the lack of merit to McDaniel's claims, and that the state law negligence claim can be disposed of for some of the same reasons as the § 1983 claims, the Court recommends resolving the state law claim as set forth above.

[11] Defendants also contend that McDaniel's negligence claim is deficient for failure to comply with the strict requirements to file and plead a notice of claim against municipal entities or their employees. *See* N.Y. Gen. Mun. Law § 50-i(1), 50-e. McDaniel apparently did timely file a notice of claim and described the manner in which the claim arose and the injuries claimed. (*See* Dkt. 64, Ex. E.) Although McDaniel did not allege

*Anderson*, No. 16-CV-983, 2017 WL 3701863, at *24 (S.D.N.Y. Aug. 25, 2017) ("Although a duty of care is owed by prison authorities with respect to the health and safety of their charges, the State's duty to prisoners does not mandate unremitting surveillance in all circumstances") (internal citation and quotation marks omitted).   Courts in this district have dismissed negligence claims against prison staff in similar circumstances.   *See, e.g.*, *House v. City Of New York*, No. 18-CV-6693, 2020 WL 6891830, at *21 (S.D.N.Y. Nov. 24, 2020) (granting summary judgment in favor of defendants and dismissing plaintiff's negligence claim where Plaintiff failed to establish that his risk of harm was reasonably foreseeable by prison staff); *Kovalchik v. City Of New York*, No. 09-CV-4546, 2014 WL 4652478, at *9 (S.D.N.Y. Sept. 18, 2014) (granting Defendant's summary judgment motion for section 1983 and negligence claims because "no jury could find that reasonable care required the City to … provide greater supervision of [plaintiff]").

### CONCLUSION

For the foregoing reasons, I recommend that Defendants' motion for summary judgment be GRANTED in its entirety and that McDaniel's claims be dismissed in their entirety.

### DEADLINE FOR OBJECTIONS AND APPEAL

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days to file written objections to this Report and Recommendation.   Such objections shall be filed with the Clerk of Court, with extra copies delivered to the Chambers of the Honorable Katherine P. Failla, United

---

filing of the notice of claim in his complaint, the Court does not recommend granting summary judgment on that basis.

24

States Courthouse, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, 500 Pearl Street, New York, New York 1007.  **FAILURE TO FILE TIMELY OBJECTIONS WILL RESULT IN WAIVER OF OBJECTIONS AND PRECLUDE APPELLATE REVIEW.**

RESPECTFULLY SUBMITTED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: January 21, 2022
        New York, New York

Copies transmitted this date to all counsel of record.  The Clerk's Office is respectfully directed to mail a copy of this Report and Recommendation to Plaintiff pro se and note service on the docket:

Curtis McDaniel
#20A0242
Barehill Correctional Facility
Caller Box 20
181 Brand Road
Malone, NY 12953